Opinion delivered June 16, 1888.

No. 6142.

## Will Matlock *v.* The State.

Practice—Theft—Possession of Stolen Property, to raise against the accused the presumption of guilt, must be recent, and be unexplained under circumstances calling upon accused for an explanation. Remote possession, however, will not call for an explanation, and will not raise the presumption of guilt. See the opinion for an elaboration of the rule and the statement of the case for evidence under which it is *held* that, in the first place, the possession of the stolen property was too remote to demand an explanation from the accused or to raise against him the presumption of guilt, and, in the second place, that the explanation made by the accused was reasonable and was not sufficiently rebutted by the evidence for the State.

Appeal from the District Court of McLennan. Tried below before the Hon. Eugene Williams.

The appellant and Jeff Matlock were jointly indicted for the theft of a cow, the property of J. B. Webb, in McLennan county, Texas, on the first day of October, 1883. The penalty assessed was a term of two years in the penitentiary.

J. B. Webb was the first witness for the State. He testified that he was the owner of the cow described in the indictment. She was a dun or reddish colored animal, with a yellow neck and specked back, and was branded with a lateral E and a bar. That brand was the brand of W. C. Adams, from whom the witness purchased the cow. She disappeared from the range possession of the witness about October 1, 1881. Witness next saw her in the butcher pen of Carl Crippen in East Waco, on or about October 1, 1883—two years after she disappeared. Crippen told witness that he bought the cow from Jeff and Will Matlock, but he surrendered her on witness's affidavit of ownership. Witness recognized his animal only by the Adams brand. While he knew the general color of the animal to correspond with that of the cow he lost, he could not have identified her by any of her flesh marks. She was taken from the range without the knowledge or consent of the witness.

Carl Crippen testified, for the State, that he purchased the animal described in the indictment, and which corresponded with the description given by the witness Webb, from the defendant and Jeff Matlock, about October 1, 1883. When they sold the animal to the witness, the Matlocks told him that they bought the animal from a negro named Smith, who lived on the Rose farm, which farm was situated a few miles above Waco, on the east side of the Brazos river. On the day after witness bought the animal, J. B. Webb came to witness's pens and claimed her, and witness surrendered her upon Webb's affidavit of ownership. He then sent word to the Matlocks, and they came in and returned to witness the purchase money, stating again that they bought the cow from a negro named Smith, who lived on the Rose farm, and exhibited to witness a piece of paper on which a bill of sale was written, which piece of paper appeared to have been the leaf of a blank book.

William Thompson testified, for the State, that in passing Crippen's butcher pen on the morning of October 1, 1883, he saw the cow described in the indictment, and identified her at once as a cow which was claimed by Mr. Webb as one he bought from W. C. Adams, about two years before. Witness notified Webb that he had seen the cow at the butcher pen, and Webb recovered her on the next day.

The State closed.

Polk Moseley testified, for the defense, that in 1883, he lived near the residence of the defendant and Jeff Matlock. The cow

described in the indictment ran on the range for at least two years before she was driven off and sold by the Matlocks. She was generally known as an estray, but was milked for a while by Mrs. Stanfield, and some of the hands of Mr. Boggess. Witness heard at one time that some of the Boggess employes claimed that the cow belonged to Boggess. He never heard Boggess claim her.

James Stanfield testified, for the defense, that he knew the cow described in the indictment. She was occasionally milked by his mother prior to her sale by defendant to Crippen. Witness had heard her claimed as the property of A. Boggess by some of Boggess's hands, but had never heard her claimed by Boggess. Witness saw the defendant and Jeff Matlock driving the said cow to Waco. They drove her over the public road, about October 1, 1883, and said that they were taking her to Waco to sell, and that they had bought her from a negro.

S. Matlock, the father of Jeff Matlock and the grandfather of the defendant, testified for the defense that on or about October 1, 1883, the defendant and Jeff Matlock came to his house, driving a cow which corresponded with the cow described in the indictment. Defendant claimed that he bought the said cow from a negro named Smith, and exhibited a bill of sale written on the leaf of a blank book and signed with a cross mark by Smith, and which bore the signature of Jeff Matlock as a witness. That bill of sale was delivered to witness's daughter for safe keeping, but was afterwards inadvertently burned with some worthless papers. On cross examination the witness said that after the release on bail, the defendant disappeared, forfeiting his bond. Witness did not know the present whereabouts of Jeff Matlock.

The defense closed.

Deputy Sheriff McGee testified, for the State, that he went to Cooke county in the winter of 1887, where he found the defendant in jail, received him from the sheriff, and brought him back to McLennan county.

*Harris & Saunders* and *Clark, Dyer & Bolinger*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

Hurt, Judge. This conviction is for theft of a cow. Webb,

the owner, lost the cow from the range about October 1, 1881. Crippen bought the cow from appellant and Jeff Matlock about October 1, 1883, at his butcher pen in East Waco, McLennan county, and paid twenty dollars for her. He put her in his pen, and on the next day Webb came, claimed and took her away. He, Crippen, sent word to appellant and Jeff, and they came in and refunded the twenty dollars, stating that they had bought the cow from a negro named Smith, on the Rose farm, in McLennan county. This farm is five or six miles above Waco. They showed him (Crippen) a little piece of paper on which a bill of sale was written. It seemed to have been torn out of a book.

The Matlocks drove the cow along a public road (the Dallas and Waco) to East Waco, and sold it to Crippen. While on the way, when asked where they got the cow, they said: "From a negro man." On or about October 1, 1883, the Matlocks drove the cow to and penned her at S. Matlock's, stating to him that they had bought her from a negro man named John Smith; appellant stating that he had given a pistol and three dollars for the cow, and he exhibited a bill of sale for the cow, the bill being written in a small book.

If the accused is found in possession of stolen property, and is called upon to explain, but fails so to do, it may be inferred —presumed—that he was the taker. But the possession must not be too remote, and, if remote, the party in possession is not bound to explain at all; the rule being that the possession must be recent. And by all the opinions (says Mr. Bishop), the presumption that the party in possession was the taker diminishes in strength as the time increases between the theft and the possession. If the possession is very remote (yet how remote must depend upon the special nature of the case), the judge, in his discretion, will exclude it as having no sufficient tendency to prove anything. Its remoteness depends upon the nature of the thing stolen. Is it such property as passes readily from hand to hand, or not? If, from the nature of the property, it would pass readily from one person to another, the possession, to have convictive strength, must be more recent than the possession of property which does not so pass. (2 Bish. Cr. Pro., secs. 739, 745.)

Applying these rules to the case in hand, we are of the opinion that the possession of the animal charged to have been stolen is too remote to call upon appellant for an explanation.

Bearing upon this question, what are the facts? The cow was stolen about October 1, 1881. She was found in possession of appellant about October 1, 1883. Two years after the theft the animal is found in the possession of the appellant. Was this possession sufficiently recent to call for an explanation? We think not, nor do we think an authority can be found holding to the contrary. (See Willis and Boyd v. The State, 24 Texas Ct. App., 586.)

But suppose we err in this conclusion. Appellant gave a reasonable and consistent account of his possession, which was not attempted to be contradicted or disproved by the State, except by evidence tending to show flight by the appellant and Jeff Matlock.

We are of opinion that the evidence is not sufficient to support this conviction, for which reason the judgment is reversed and the cause remanded.

*Reversed and remanded.*